## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARK C. KENNEDY, | ) | **CIVIL ACTION** |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | TRIAL BY JURY DEMANDED |
| | ) | |
| KENNETH C. DECKER, individually, and | ) | |
| KENT COUNTY LEVY COURT, | ) | |
| a municipal corporation, | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

1.      This is a civil rights in public employment case under 42 *U.S.C.* § 1983, and the Delaware Discrimination in Employment Act, 19 *Del. C.* § 711 *et seq.* by a municipality's then 52-year old, Trinidadian male Media Support Coordinator.  Plaintiff alleges that he was denied promotion to Assistant County Administrator because of his national origin, his sex, and his age. He also alleges subsequent retaliation in the terms and conditions of his employment after he filed with the United States Equal Employment Opportunity Commission and the Delaware Department of Labor his initial Charge of Discrimination for the denied promotions.

### I.  JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 42 *U.S.C.* § 1983; 42 *U.S.C.* § 1981a, the Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071; 28 *U.S.C.* §§ 1331, 1337, 1343, 2201, and 2202, and the Fourteenth Amendment to the U.S. Constitution.

3.      The federal causes of action in Counts I through III, arise under 42 *U.S.C.* § 1983, and the Fourteenth Amendment of the U.S. Constitution.  The claims arose in this judicial district.

4.    This Court has jurisdiction over the state law claims in Counts IV through VII, under 19 *Del. C.* §§ 711(a)(1) and (f), pursuant to 28 *U.S.C.* § 1367, which provides for supplemental jurisdiction.

5.    All conditions precedent to jurisdiction have occurred or have been complied with.  Plaintiff filed two timely Charges of Discrimination (one for denial of promotion and one for subsequent retaliation) with the United States Equal Employment Opportunity Commission ("EEOC").  The complaints were dually filed with and investigated by the Delaware Department of Labor ("DDOL").  All administrative proceedings have been terminated.  The DDOL issued Plaintiff a Final Determination and Right to Sue Notice dated October 23, 2025.  Ex. A (attached).  Plaintiff files his Complaint within ninety (90) days of receipt of such Notice.

6.    Venue is proper in this district because it is the judicial district where Plaintiff was employed, the unlawful employment practices occurred, and the claims arose.

## II.  PARTIES

7.    At all times material hereto, Plaintiff Mark C. Kennedy was a 52-year old male native of Trinidad.  Plaintiff was born in 1971.  At all times material hereto, Plaintiff was and is a U.S. citizen.

8.    Plaintiff possesses a Bachelor's of Arts Degree in Business Administration, a Series 6 Certification, and a Certification as a Technology Specialist.

9.    Defendant Kent County Levy Court ("KCLC") is the governmental entity governing Kent County, Delaware.  KCLC has approximately 330 employees.  It has a principal place of business at 555 Bay Road, Dover, Delaware 19901.  It is sued on all Counts in this Complaint.

2

10.     At all times material hereto, Defendant Kenneth C. Decker was a male U.S. native, approximately age 62.  Defendant Decker was KCLC's County Administrator for less than two (2) years from March 1, 2023 to September 24, 2024.  He was placed on a paid administrative leave scheduled to last from September 25, 2024 through February 28, 2027.  He is scheduled to be placed on a six-month severance period from March 1, 2027 through August 31, 2027.  He is sued in his individual capacity only on Counts I through III of the Complaint. He is not sued on Counts IV through VII.

11.     Plaintiff has been employed by KCLC for more than twenty (20) years from March 18, 2005 to the present.  Plaintiff is its Media Support Coordinator.

12.     Plaintiff has earned ratings of satisfactory or better on all of his annual evaluations from KCLC.  Most recently on May 31, 2023, he earned an evaluation that rated his performance for the period from May 1, 2022 to May 1, 2023, as Above Standards in three (3) performance categories and Meets Standards in three (3) performance categories from his then immediate supervisor Information Technology ("IT") Director Joseph Simmons, a male U.S. native, then approximately age 55.

### III.  FACTS GIVING RISE TO THE ACTION

13.     On January 16, 2024, Defendant Decker announced that he had hired Lauren Gutierrez for the position of Assistant County Administrator ("the position").

### A.     Posting and Application

14.     Previously, on or about June 15, 2023, KCLC posted the position.

15.     Plaintiff met the minimum qualifications for the position and timely applied on or about June 15, 2023.

3

**B.**    <u>**Denial of Position**</u>

16.    On July 8, 2023, Defendant KCLC suffered a network intrusion in the form of a ransomware attack on its computer system.  Initially in response, KCLC's then County Administrator, Defendant Kenneth Decker, a male U.S. native, then approximately age 62, extended the application deadline for the position from August 23, 2023 to September 15, 2023.

17.    Then, by letter on on September 14, 2023, Defendant Decker informed Plaintiff that "[t]he network intrusion resulted in an unconscionably long delay in the hiring process[,]" and that he had decided not to fill the position at that time.

18.    Defendant Decker also informed Plaintiff he would keep his application on file in the event Decker reopened the position within the next six (6) months.

19.    At least one of the seven (7) County Commissioners expressed that he did not think it was a good idea not to hire for the position and that Defendant Decker should hire from within KCLC.

20.    Contrary to Defendant Decker's September 14, 2023 letter to Plaintiff, Decker informed Plaintiff's supervisor Joseph Simmons by e-mail on September 28, 2023, that he rejected his application allegedly because Plaintiff was not currently serving at the director level.

21.    Yet, previously, Defendant Decker encouraged his less senior, less qualified, sufficiently younger female, U.S. native co-worker Taylor Burkett, approximately age 28, to apply for the position.  At that time, Burkett had been employed by KCLC for less than a year, had little to no administrative experience or training, and was not serving at the director level.

4

C.    **Factors Usually Considered Were Ignored**.

22.    On October 23, 2023, Defendant Decker admitted in writing that KCLC had strong internal candidates for management positions.

23.    On January 19, 2024, Defendant Decker admitted to Plaintiff in writing that Plaintiff has good ideas.

24.    Previously, on March 14, 2023, Defendant Decker recognized Plaintiff's leadership, competence, and value to Defendant KCLC by informing Plaintiff that KCLC needed someone else to work on the purchasing manual so that Plaintiff was not the one in charge of "everything."

25.    Also in 2023, Defendant Decker assigned Plaintiff and entrusted Plaintiff to complete two (2) major projects that typically are performed by the Assistant County Administrator: 1) the Pole Building RFP project from July 5th to September 2023, and 2) the Lead Paramedic Station 6 Building Signage Project from December 2023 to May 2024. Decker thanked Plaintiff for performing the role of Assistant County Administrator because he had not yet filled the position. However, Decker did not consider this factor in rejecting Plaintiff's application for the position.

26.    Plaintiff had written recommendations for the position from the prior County Administrator and his prior supervisor, female U.S. native IT Director Kimberly Crouch, then approximately age 63.

27.    Upon information and belief, County Commissioner Paul Hertz made a verbal recommendation to Defendant Decker that Plaintiff was a good candidate for the position.

28.     Yet, KCLC and Decker ignored all of these recommendations in denying Plaintiff the position.

29.     In late October or early November 2023, Defendant Decker asked Plaintiff if he wanted the job of his then current supervisor, IT Director Joseph Simmons.  At that time, the IT Director position was filled by Simmons and thus was not available.  Defendant Decker also asked Plaintiff if he wanted to at least be the Interim Director of IT.  The director and interim director positions Defendant Decker offered Plaintiff were higher pay grades than the Assistant County Administrator position for which Decker has rejected him.

30.     Then, in mid-November 2023, Defendant Decker asked Plaintiff if he wanted to be Director of Communications, a position that did not and still does not currently exist.

31.     Section 68-7.C(3) of the Kent County Code requires Defendant KCLC's open competitive recruiting to consider all eligible candidates including employees of KCLC. However, Defendants KCLC and Decker did not consider an eligible and qualified candidate when Plaintiff met the minimum qualifications, he timely applied, and he was not hired for the position.

**D.     Successful Candidate**

32.     Instead, Defendants KCLC and Decker continued to search for other qualified candidates for the position.

33.     On November 21, 2023, Defendant Decker admitted in writing that before posting the position, he had spoken with professionals he thought might be excellent candidates and he thought the best fit among his "pool" of candidates was Lauren Gutierrez.

34.     Gutierrez was not an internal candidate.

35.     More importantly, when the position was posted on or about June 15, 2023, Gutierrez never timely applied before the application deadline.

36.     Nevertheless, Defendant Decker offered Gutierrez the position, and Gutierrez accepted the position with a tentative start date of January 16, 2024.

37.     Again, on January 16, 2024, Defendant Decker announced that he had hired Lauren Gutierrez for the position.

38.     Lauren Gutierrez is a female U.S. native.

39.     When Defendant Decker hired Lauren Gutierrez, she was in her early 40's.

40.     Defendant KCLC's Affirmative Action Statement prohibits discrimination because of national origin, sex, or age.

41.     Section 68-7.B(2) of the Kent County Code prohibits discrimination because of national origin, sex, or age ("this provision").

42.     Defendant Decker violated this provision and Defendant KCLC's Affirmative Action Statement when he selected and hired the sufficiently younger, female U.S. native Lauren Gutierrez for the position over the qualified 52-year old, male Trinidadian Plaintiff.

43.     After selecting Gutierrez, Defendant Decker promised Plaintiff's sufficiently younger, female U.S. native co-worker Taylor Burkett that he would make her the Chief of Cyber Security.  At that time, no such position even existed.

**E.     Interview Process**

44.     Previously in 2022, the position of Assistant County Administrator was vacant and posted.

45.     However, in 2022, in accordance with Section 68-7.G of the Kent County Code,

KCLC's prior HR Director created an eligibility list and provided the prior County Administrator the names of the top three (3) qualified candidates from that list, and the prior County Administrator conducted an interviewed panel of those top three (3) candidates.

46.    In 2022, Plaintiff timely applied and was one (1) of two (2) finalists for the position.

47.    At that time, Defendant KCLC also selected a sufficiently younger, female U.S. native in her early 40's for the position.

48.    She eventually vacated the position.

49.    In denying Plaintiff the promotion here, Defendants KCLC and Decker ignored the fact that Plaintiff was one (1) of two (2) finalists for the position in 2022.

50.    Also, when Defendant Decker denied Plaintiff the promotion here, Defendant KCLC violated its policy and practice by not having an interview panel and instead selecting Gutierrez.

51.    Defendants KCLC and Decker also violated its policy and practice by selecting Gutierrez for the position when she had not timely applied before the original deadline.

52.    Yet, Defendants KCLC and Decker previously followed its policy and practice in hiring internal candidates Public Safety Employee Kevin Sipple, a male U.S. native, age 53, to be Director of Public Safety on or about June 20, 2023; and Interim Human Resources ("HR") Director Trudena "Trudy" Horsey, a female U.S. native, age 40, to be the permanent HR Director on or about October 23, 2023.

53.    Both Sipple and Horsey completed an open, competitive process that included interviews.  In particular, the hiring process for HR Director was a highly competitive process

with two (2) independent interview panels.

**F.     Real Reason and Pretext**

54.     The real reason for the denial of promotion of Plaintiff is discrimination based upon his national origin, his sex, and/or his age.

55.     Any alleged legitimate non-discriminatory reason offered by Defendant KCLC for the decision not to promote Plaintiff is a pretext for discrimination because of national origin, sex, and/or age.

56.     The natural probative force of the evidence demonstrates discrimination. Alternatively, a reasonable fact finder could choose to disbelieve any non-discriminatory reasons offered by Defendant KCLC because Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in KCLC's explanation that make it unworthy of belief.

**G.     Other Circumstantial Evidence of National Origin Discrimination**

57.     Upon information and belief, Defendant KCLC has no foreign-born citizens in management or other decision making positions.

**H.     Protected Activity**

58.     On or about April 25, 2024, Plaintiff, through his undersigned attorney, sent Defendant KCLC a draft Charge of Discrimination asserting claims of national origin, sex, and age discrimination arising from the hiring of Gutierrez on January 16, 2024.

59.     On or about May 13, 2024, Defendant KCLC denied any wrongdoing by Defendants.

60.     On or about May 15, 2024, Plaintiff, through his undersigned attorney, filed a

Charge of Discrimination ("initial Charge") with the EEOC and DDOL alleging discrimination

based on national origin, sex, and age discrimination resulting in the denial of promotion.

61.      On or about May 15, 2024, the EEOC acknowledged receipt of Plaintiff's

initial Charge and assigned it EEOC Charge Number 530-2024-05989.

**I.      <u>Retaliatory Transfer to a Back Office</u>**

62.      On May 21, 2024, at approximately 5:15 p.m., Plaintiff's immediate supervisor

Information Technology ("IT") Director Joseph Simmons, a male U.S. native approximately age

55, informed Plaintiff that he had some "bad news" to share with Plaintiff.

63.      Simmons informed Plaintiff that County Administrator Kenneth Decker, a male

U.S. native, then approximately age 62; Assistant County Administrator Lauren Gutierrez, a

female U.S. native then in her early 40's; and Human Resources ("HR") Director Trudena

"Trudy" Horsey, a female U.S. native, then age 40, were planning to remove Plaintiff from the

Media Center and relocate Plaintiff's workspace to a back office away from the Media Center

and even farther away from the IT Office, the Division he is a part of and where Plaintiff's key

co-workers that Plaintiff frequently must interact with are located.

64.      At that time, Plaintiff's workspace for the prior nineteen (19) years had been in

the Media Center.

65.      As the Media Support Coordinator, Plaintiff's primary job responsibility is

overseeing the AV Equipment in the Media Center, LC Chamber, and three (3) conference

rooms and the digital signage throughout the building.

66.      Plaintiff explained to Simmons that he needed to be able to monitor the AV

Equipment and digital signage feeds regularly and that the only way to do that was in the Media

10

Center.

67.     Plaintiff stated he was not sure what has changed and asked why he was being moved.

68.     In addition to housing critical AV equipment, the Media Center also is the storage space for AV accessories including, but not limited to, microphones, specialty cables, connectors, monitors, controllers, data storage, AV network switches, microphone stands, and computer devices, and other equipment.  Plaintiff's job requires him to have dedicated space to store and work on this equipment when necessary.

69.     Plaintiff explained to Simmons the importance of Plaintiff's access to this space and equipment in order to perform Plaintiff's job's essential responsibilities.

70.     Plaintiff also explained how important customer service is and how it is much easier for customers in the conference rooms to find Plaintiff for meeting logistics, room setup, and AV equipment assistance and troubleshooting in the Media Center.

71.     Simmons reassured Plaintiff that he understood Plaintiff's concerns.  He admitted that he had argued with Decker, Gutierrez, and Horsey against removing Plaintiff, but they insisted and were determined to remove Plaintiff from his longtime workspace.

72.     This unnecessary and adverse action occurred less than one week after Plaintiff filed his initial Charge against Defendant KCLC.

73.     On May 28, 2024, around 11:00 a.m., Assistant County Administrator Lauren Gutierrez sent Plaintiff a meeting request to attend at 2:00 p.m. a Communications Division Discussion where she would announce the decision of Decker and her to remove Plaintiff from Plaintiff's workspace and relocate Plaintiff to the back office.

74.     At that meeting were Gutierrez; Simmons; Public Information Officer Kelly Pitts, a female U.S. native, then approximately age 60; Website Coordinator Jennifer Sandonato, a female U.S. native, then approximately age 42; and Plaintiff.

75.     Gutierrez announced that Plaintiff's desk was being moved across the hall from where he previously had sat for nineteen (19) years.

76.     This new location is an obscure and deeply recessed office off the main hallway. This is very different from Plaintiff's prior, prominent workspace in the Media Center along the second floor hallway, conveniently located nearby and surrounded in close proximity to the AV conference rooms.

77.     The Media Center is convenient for providing AV support as it allows for conference room users to quickly find Plaintiff for assistance.

78.     A very important aspect of Plaintiff's job is providing exceptional customer service.  Yet, the move made it more difficult for AV and conference room users to find Plaintiff for assistance and injured the reputation for an exceptional level of AV customer service which Defendant KCLC, the Media Center, the IT Office, and Plaintiff had earned.

79.      Monitoring the systems are critical for ensuring the equipment is functional for meetings and accurate in its messaging.  However, Plaintiff was no longer able to monitor the AV Equipment Network and Digital signage system without making repeated daily trips to the Media Center from the back office.

80.     Gutierrez also admitted that the new workspace would be renovated for another department within the next sixty (60) to ninety (90) days, Plaintiff's new location only would be temporary, and Defendants would relocate Plaintiff a second time.

81.    On June 4, 2024, the day Plaintiff started working at the new workspace, many of Plaintiff's colleagues were shocked to discover that he was no longer in the Media Center.

**J.    Threats to Create and Place Plaintiff in an Unnecessary Division**

82.    At the meeting on May 28, 2024, Gutierrez also indicated that Defendant Decker and she were "tinkering" with the idea of forming a Communications Division ("the Division"), but there were no concrete plans drawn up at that time, and they did not yet know how the Division would work, who would be part of the Division ultimately, or what roles they would play.  In fact, Gutierrez admitted that the Division was unnecessary and she was unsure if the Division even would be viable in the long run.

83.    Gutierrez also indicated that Plaintiff would be stationed near Public Information Officer Kelly Pitts and Website Coordinator Jennifer Sandonato to see how Pitts, Sandonato, and Plaintiff would fare working in the same area.

84.    Previously, neither Pitts nor Sandonato worked in close proximity to Plaintiff or each other.  Though Plaintiff assists many of his colleagues with their work including Pitts and Sandonato, neither of them had been involved in Plaintiff's AV work in any way.

85.    As Gutierrez mandated, the move occurred on June 5, 2024.  Only Plaintiff's desk, laptop, and phone were moved.  All other equipment that Plaintiff needed to perform his job remained in the Media Center.

86.    Gutierrez also prefaced this action on the impeding hire of a new receptionist or administrative assistant for her and Decker's offices which had nothing to do with Plaintiff, his work, or his work area.

13

87.     Defendant KCLC built the Media Center in 2005, to house the Media Support Coordinator position that Plaintiff holds.

**K.      Verbal and Physical Harassment from Two Commissioners**

88.     Also, on May 21, 2024, two unusual occurrences happened during the Levy Court meeting.

89.     In the middle of the meeting, around 8:00 p.m., Commissioner Robert J. Scott, a male U.S. native, then approximately age 55, seated approximately fifteen (15) feet to Plaintiff's right, made a "pssst" sound in Plaintiff's direction to get Plaintiff's attention.

90.     When Plaintiff looked in his direction, Mr. Scott was smiling and laughing and gave Plaintiff a thumbs up sign.

91.     In the prior one and a half (1½) years that Scott had served Defendant KCLC's Board of Commissioners, he never had done that to Plaintiff.

92.     After the meeting, around 8:30 p.m., Plaintiff asked Scott if he was trying to get Plaintiff's attention for something he needed to be aware of or something he needed.

93.     Scott said, "No, I was just being silly, playing around." Then, he laughed.

94.     While Plaintiff was having this conversation with Scott, Commissioner Joanne Masten, a female U.S. native, then approximately age 70, walked behind Plaintiff, rubbed the back of Plaintiff's shoulder, and said, "Good night."

95.     Plaintiff felt uncomfortable with the touch because in her almost four (4) years as a Commissioner, Masten previously never touched Plaintiff in that manner.

96.     Plaintiff cannot even recall her shaking Plaintiff's hand more than twice including when they first were introduced.

97.     From Plaintiff's experience and observations, she never has been a "touchy-feely" type of person with Plaintiff or other employees of Defendant KCLC.

98.     In fact, she usually never goes out of her way to greet Plaintiff good night verbally yet alone with a physical touch.

99.     Yet, on this occasion, she felt comfortable enough to touch Plaintiff as if he was her pet.

100.    Plaintiff did not like it and took offense at it.

**L.    Intimidating Call from Defendant KCLC's Attorney**

101.    On May 28, 2024, at approximately 12:15 pm, the attorney representing Defendant KCLC ("Defendant's attorney") and defending against Plaintiff's initial Charge called Plaintiff's work phone number.

102.    Defendant's attorney made Plaintiff very nervous when he saw the name of opposing counsel on Plaintiff's caller ID.

103.    Plaintiff did not answer and let the call go to Plaintiff's voice mailbox.

104.    Defendant's attorney left a voice message in Plaintiff's voice mailbox for Lauren Gutierrez.

105.    When Plaintiff returned the call of Defendant's attorney, he claimed he was trying to speak to Gutierrez.

106.    When Plaintiff explained that he had called Plaintiff, Defendant's attorney did not apologize or claim that he had misdialed.

107.    Plaintiff politely gave him her phone number and ended the call.

108.    The last four digits of Plaintiff's office phone number are 2355, and the last four digits of Gutierrez's phone number are 2302, a completely different number.

109.    Furthermore, Plaintiff's voice mail greeting clearly explains to callers that they have reached the direct phone line of Mark Kennedy.

110.    This incident bothered Plaintiff for the rest of the day.  He had difficulty sleeping because he was ruminating over the meeting earlier and the phone call from Defendant's attorney.

111.    Plaintiff felt intimidated by the call from Defendant's attorney.

## M.    More Harassment from a Commissioner and the Younger, American, Female Selectee Chosen Over Plaintiff for Assistant County Administrator

112.    At the weekly Levy Court Commissioners meeting at 7 p.m. on June 4, 2024, Commissioner Robert Scott continued making inconsiderate jokes at Plaintiff's expense.

113.    As he walked into the Chamber, he called Plaintiff's name and said in a serious tone that he had a question to ask Plaintiff.  Thinking he needed help with something Plaintiff answered, "Sure."

114.    He then proceeded to tell Plaintiff in a loud and jovial tone, how months ago he scheduled a lunch date with Gutierrez, she canceled on him, and said that she would reschedule.

115.    He further joked how it is now months later and she still has not rescheduled.  So, he indicated he was asking Plaintiff's advice as to what he should do.

116.    Gutierrez heard this because she was sitting next to Plaintiff.

117.    Scott, Gutierrez, and Clerk of the Peace Brenda Wooten, who was seated next to Gutierrez, bantered, joked, and laughed with each other about the matter and the strange question Scott asked Plaintiff but for which he did not await an answer.  So, Plaintiff simply returned to

Plaintiff's work of preparing the AV for the meeting.

118.    Then, at the end of the meeting, Wooten handed out candy as is her custom.  After Wooten worked many years with Plaintiff, Wooten knew that Plaintiff usually does not eat candy and thus politely asks Plaintiff if he would like some rather than immediately handing it to him.

119.    After accepting candy from Wooten, Gutierrez took another piece from Wooten and threw it in front of Plaintiff on the desk where Plaintiff was seated.  Wooten never threw candy in front of anyone and usually asks if they would like a piece before presumptively giving it to them.

120.    Plaintiff politely said thanks and continued with his work.

121.    The awkward hyper-joviality from Scott and Gutierrez was insincere and carried out in a calloused, inconsiderate, and provoking manner and without regard for the fact that Plaintiff was not receptive to their unusual and uncharacteristic interactions with Plaintiff.

122.    Plaintiff had not worked with Scott or Gutierrez very long.  As a matter of basic politeness, Plaintiff would not feel at liberty to behave with anyone he only recently started working with in the same manner that they behaved toward Plaintiff.

123.    Both interactions from these Commissioners were weird and unusual compared to their prior interactions with Defendant KCLC's employees, disrespectful to Plaintiff, and made him feel uncomfortable.

## IV.  INJURIES AND DAMAGES

124.    In 2023, Plaintiff earned $76,354.32, plus benefits.

125.    The advertised compensation package for the Assistant County Administrator position Plaintiff applied for was approximately $92,815 to $135,466 per year plus benefits.

17

126.    In 2024, Defendant paid Lauren Gutierrez ("selectee") for the position $115,584.01 plus benefits.

127.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered lost back pay and interest, lost front pay; lost pension; ill health, physical pain, discomfort, emotional distress, and mental harm; humiliation, embarrassment, injury to reputation; and other pecuniary and non-pecuniary losses and permanent injuries.  Plaintiff also has been required to pay for medical care, psychological care, and prescribed physical therapy that he reasonably needed and actually obtained for which he otherwise would not have been required to pay.  He is still undergoing continuing medical and psychological treatment and prescribed physical therapy, and his injuries are permanent.

## V.  ALLEGATIONS REGARDING DEFENDANTS' CONDUCT

128.    By the actions of individual(s) acting at the policy making level, Defendant KCLC by its policy, practice or custom has illegally denied Plaintiff the promotion, discriminated against him in the terms and conditions of his employment, and retaliated against him for filing a Charge of Discrimination or opposing practices made illegal by the Delaware Discrimination in Employment Act, and otherwise harassed Plaintiff.

129.    The actions of the Defendants were taken pursuant to County policies, customs and/or practices and were authorized, sanctioned, implemented, permitted and ratified by officials functioning at a policy making level.

130.    At all times material hereto, Defendant Decker participated in, authorized, ratified, and sanctioned the discriminatory and retaliatory deprivations described above which illegally denied him the promotion, discriminated against him in terms and conditions of his

employment, retaliated against him for filing a Charge of Discrimination with the EEOC and the

DDOL or opposing practices made illegal by the Delaware Discrimination in Employment Act,

and otherwise harassed Plaintiff.

131.    At all times material hereto, the individual Defendant Decker was acting under

color of law.  The constitutional deprivations described herein are fairly attributable to the State.

132.    The actions of the Defendants were deliberately, intentionally, willfully,

purposefully and knowingly done in violation of federally protected rights and because of the

exercise of those rights.  Defendants either knew or showed a negligent or reckless disregard for

the matter of whether their conduct violated federal rights.  Their actions were outrageous and

taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds

to support them.  Their actions were wanton and malicious or taken with reckless indifference to

federally protected rights.  The exercise of statutory and constitutional rights made a difference

in all actions adverse to Plaintiff.  The exercise of statutory and constitutional rights was a

motivating or determinative factor in all actions adverse to Plaintiff.

133.    Plaintiff's national origin (native of Trinidad) made a difference in all actions

adverse to him.

134.    In selecting the U.S. native selectee over the Trinidadian Plaintiff for the position,

Defendant Decker's actions did not further any narrowly drawn or compelling governmental

interest.

135.    Plaintiff's sex (male) made a difference in all actions adverse to him.

136.    In selecting the female selectee over the male Plaintiff for the position, Defendant

Decker's actions did not serve any important governmental interest and were not substantially

related to any important governmental interest.

137.    Plaintiff's age (then 52), made a difference in all actions adverse to him.

138.    In selecting the sufficiently younger selectee over the older Plaintiff, Defendant Decker's actions were not rationally related to a legitimate interest.

139.    Defendant Decker did not reasonably believe that the actions he took were necessary to accomplish any legitimate governmental purpose.

140.    Defendant Decker's actions are not so reasonable as to further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

141.    Defendant Decker's actions violated clearly established constitutional rights of which any official would have known.

142.    Defendant Decker's actions were motivated by bias, bad faith, and improper motive.

143.    Defendant Decker's actions constitute an abuse of governmental power.

### COUNT I (42 *U.S.C.* § 1983 and U.S. CONST. AMENDMENT XIV DENIAL OF PROMOTION BECAUSE OF NATIONAL ORIGIN)

144.    Plaintiff repeats and realleges all paragraphs set out above.

145.    As County Administrator at all times material hereto, Defendant Decker was an official of Kent County Levy Court.

146.    As then County Administrator, Defendant Decker used power that he possessed by virtue of state law to hire Lauren Gutierrez to be Assistant County Administrator and to deny Plaintiff the position.  In so doing, Defendant Decker acted under color of state law.

147.    The deprivation resulted from Defendant KCLC's official policy or custom. Specifically, the decision to hire and select Gutierrez for the position rather than Plaintiff was

officially made by Defendant KCLC's policy-making official, Defendant Decker. His deliberate choice to select and hire Gutierrez instead of Plaintiff represents official policy of Defendant KCLC.

148.    Plaintiff's national origin (Trinidadian) was a motivating factor or a determinative factor in Defendant Decker's decision to promote the U.S. native Gutierrez instead of Plaintiff.

149.    Defendant KCLC and Defendant Decker deprived Plaintiff of his federal constitutional right to Equal Protection under the law to any person because of national origin.

150.    At the time that Defendant Decker discriminated against Plaintiff because of his national origin, the unlawfulness of Defendant Decker's conduct was clearly established.

151.    As a result of Defendants' conduct, Plaintiff has suffered the injuries and damages listed in Section IV above.

### COUNT II (42 *U.S.C.* § 1983 and U.S. CONST. AMENDMENT XIV<br>DENIAL OF PROMOTION BECAUSE OF SEX

152.    Plaintiff repeats and realleges all paragraphs set out above.

153.    As County Administrator at all times material hereto, Defendant Decker was an official of Kent County Levy Court.

154.    As then County Administrator, Defendant Decker used power that he possessed by virtue of state law to hire Lauren Gutierrez to be Assistant County Administrator and to deny Plaintiff the position. In so doing, Defendant Decker acted under color of state law.

155.    The deprivation resulted from Defendant KCLC's official policy or custom. Specifically, the decision to hire and select Gutierrez for the position rather than Plaintiff was officially made by Defendant KCLC's policy-making official, Defendant Decker. His deliberate choice to select and hire Gutierrez instead of Plaintiff represents official policy of Defendant

21

KCLC.

156.    Plaintiff's sex (male) was a motivating factor or a determinative factor in Defendant Decker's decision to select and hire the female Gutierrez instead of Plaintiff.

157.    Defendant KCLC and Defendant Decker deprived Plaintiff of his federal constitutional right to Equal Protection under the law to any person because of sex.

158.    At the time that Defendant Decker discriminated against Plaintiff because of his sex, the unlawfulness of Defendant Decker's conduct was clearly established.

159.    As a result of Defendants' conduct, Plaintiff has suffered the injuries and damages listed in Section IV above.

### COUNT III (42 *U.S.C.* § 1983 and U.S. CONST. AMENDMENT XIV DENIAL OF PROMOTION BECAUSE OF AGE)

160.    Plaintiff repeats and realleges all paragraphs set out above.

161.    As County Administrator at all times material hereto, Defendant Decker was an official of Kent County Levy Court.

162.    As then County Administrator, Defendant Decker used power that he possessed by virtue of state law to hire Lauren Gutierrez to be Assistant County Administrator and to deny Plaintiff the position.  In so doing, Defendant Decker acted under color of state law.

163.    The deprivation resulted from Defendant KCLC's official policy or custom. Specifically, the decision to hire and select Gutierrez for the position rather than Plaintiff was officially made by Defendant KCLC's policy-making official, Defendant Decker.  His deliberate choice to select and hire Gutierrez instead of Plaintiff represents official policy of Defendant KCLC.

164.    Plaintiff's age (then 52), was a motivating factor or a determinative factor in

Defendant Decker's decision to select and hire the sufficiently younger Gutierrez (then early 40's), instead of Plaintiff.

165.    Defendant KCLC and Defendant Decker deprived Plaintiff of his federal constitutional right to Equal Protection under the law to any person because of age.

166.    At the time that Defendant Decker discriminated against Plaintiff because of his age, the unlawfulness of Defendant Decker's conduct was clearly established.

167.    As a result of Defendants' conduct, Plaintiff has suffered the injuries and damages listed in Section IV above.

## COUNT IV (DELAWARE DISCRIMINATION IN EMPLOYMENT ACT DENIAL OF PROMOTION BECAUSE OF NATIONAL ORIGIN - PRETEXT

168.    Plaintiff repeats and realleges all paragraphs set out above.

**A.    Prima Facie Case**

169.    Plaintiff is a native of Trinidad.

170.    Defendant KCLC denied Plaintiff promotion to Assistant County Administrator.

171.    Plaintiff's national origin was a motivating or determinative factor in Defendant KCLC's decision to deny Plaintiff the promotion.

172.    Defendant KCLC intentionally discriminated against Plaintiff because of his national origin.

**B.    Plaintiff's Ultimate Burden**

173.    Any stated legitimate non-discriminatory reason offered by Defendant KCLC for denial of promotion of Plaintiff is a pretext for intentional discrimination based on national origin.  Any reason offered by that Defendant is unworthy of credence because Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions

in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that the Defendant KCLC did not act for the asserted non-discriminatory reasons.

174.    Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the denial of promotion of Plaintiff was his national origin.

175.    Plaintiff's statutory right to be free of national origin discrimination has been denied under the Delaware Discrimination in Employment Act, 19 *Del. C.* § 711 *et seq.* ("DDEA"), because he was denied promotion or he otherwise was discriminated against on the basis of his national origin.

176.    As a result, Plaintiff has suffered the injuries and damages listed in Part IV above.

## COUNT V (DELAWARE DISCRIMINATION IN EMPLOYMENT ACT DENIAL OF PROMOTION BECAUSE OF SEX - PRETEXT)

177.    Plaintiff repeats and realleges all paragraphs set out above.

**A.    Prima Facie Case**

178.    Plaintiff is a male.

179.    Defendant KCLC denied Plaintiff promotion to Assistant County Administrator.

180.    Plaintiff's sex was a motivating or determinative factor in Defendant KCLC's decision to deny Plaintiff the promotion.

181.    Defendant KCLC intentionally discriminated against Plaintiff because of his sex.

**B.    Plaintiff's Ultimate Burden**

182.    Any stated legitimate non-discriminatory reason offered by Defendant KCLC for denial of promotion of Plaintiff is a pretext for intentional discrimination based on sex.  Any

24

reason offered by that Defendant is unworthy of credence because Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that the Defendant KCLC did not act for the asserted non-discriminatory reasons.

183.    Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the denial of promotion of Plaintiff was his sex.

184.    Plaintiff's statutory right to be free of sex discrimination has been denied under the DDEA because he was denied promotion or he otherwise was discriminated against on the basis of his sex.

185.    As a result, Plaintiff has suffered the injuries and damages listed in Part IV above.

### COUNT VI (DELAWARE DISCRIMINATION IN EMPLOYMENT ACT DENIAL OF PROMOTION BECAUSE OF AGE - DISPARATE TREATMENT)

186.    Plaintiff repeats and realleges all paragraphs set out above.

**A.    Prima Facie Case**

187.    At all times material hereto, Plaintiff was age 40 or older.  Plaintiff was age 52, when Defendant selected and hired Lauren Gutierrez to be Assistant County Administrator instead of Plaintiff.

188.    Defendant KCLC denied Plaintiff promotion to Assistant County Administrator.

189.    Plaintiff's age was a determinative factor in Defendant KCLC's decision to deny Plaintiff the promotion to Assistant County Administrator.

190.    Defendant KCLC intentionally discriminated against Plaintiff because of his age.

25

**B.**    **Plaintiff's Ultimate Burden**

191.    Any stated legitimate non-discriminatory reason offered by Defendant KCLC for denial of promotion of Plaintiff is a pretext for intentional discrimination based on age.  Any reason offered by that Defendant is unworthy of credence because Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that the Defendant KCLC did not act for the asserted non-discriminatory reasons.

192.    Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the denial of promotion of Plaintiff was his age.

193.    Plaintiff's statutory right to be free of age discrimination has been denied under the DDEA because he was denied promotion or he otherwise was discriminated against on the basis of his age.

194.    As a result, Plaintiff has suffered the injuries and damages listed in Part IV above.

### COUNT VII (DELAWARE DISCRIMINATION IN EMPLOYMENT ACT RETALIATION FOR OPPOSING UNLAWFUL PRACTICES)

195.    Plaintiff repeats and realleges all paragraphs set out above.

196.    Plaintiff engaged in activity protected by the DDEA.  Plaintiff opposed unlawful discrimination on the basis of his national origin, his sex, and his age by making the complaints described above in Section III.H.

197.    Defendant KCLC subjected Plaintiff to a materially adverse action at the time of his protected activity or after his protected activity took place.  Plaintiff was subjected to

harassment in the terms, conditions, or privileges of his employment because of his protected activity by Defendant KCLC's agents including, but not limited to, then County Administrator Defendant Kenneth Decker; the selectee for the position of Assistant County Administrator Lauren Gutierrez; HR Director Trudy Horsey; Commissioner Robert J. Scott; Commissioner Joanne Masten; and Defendant's attorney as described above in Parts III.I to M above.

198.    Defendant KCLC's conduct was not welcomed by Plaintiff.

199.    Defendant KCLC's conduct was motivated by the fact that Plaintiff engaged in protected activity under the DDEA.

200.    The conduct was so severe or pervasive that a reasonable employee in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

201.    Plaintiff believed his work environment to be hostile or abusive as a result of Defendant KCLC's conduct.

202.    Plaintiff suffered an adverse, tangible employment action as a result of the hostile work environment.

203.    Under all the circumstances, Plaintiff has been illegally discriminated against in terms and conditions of employment, and otherwise harassed, by a discriminatory, hostile, and abusive work environment which was created, approved, and tolerated by management because of Plaintiff's protected activity.

204.    There was a causal connection between Plaintiff's aforementioned protected activity and Defendant KCLC's harassment of Plaintiff.

205.    Plaintiff's protected activity had a determinative effect on Defendant KCLC's harassment of Plaintiff.

206.    Any stated legitimate non-retaliatory reason offered by Defendant KCLC for its harassment of Plaintiff is a pretext for retaliation and intentional discrimination based on national origin, sex, and/or age.  Any reason offered by Defendant KCLC is unworthy of credence because Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that Defendant KCLC did not act for the asserted non-retaliatory reasons.

207.    Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a determinative cause of the harassment of Plaintiff was retaliation for his complaints of discrimination based on his national origin, his sex, and/or his age.

208.    Plaintiff's statutory rights were violated under the DDEA, because he was harassed or otherwise discriminated against in retaliation for opposing illegal practices on the basis of his national origin, his sex, and/or his age.

209.    As a result, Plaintiff has suffered the injuries and damages listed in Part IV above.

210.    Plaintiff's statutory right to be free of retaliation for opposing discrimination in the workplace has been denied under the DDEA.

**WHEREFORE**, Plaintiff prays that the Court:

(a)    Enter judgment against the Defendants, jointly and severally;

(b)    Enter a declaratory judgment declaring the acts of the Defendants to be a violation of Plaintiffs' statutory and Constitutional rights;

( c)    Enter a judgment against the Defendants, jointly and severally, for nominal or

presumed damages;

(d)    Under 42 *U.S.C.* § 1983, enter a judgment against Defendants for compensatory damages for lost back pay and interest, lost front pay; lost pension; ill health, physical pain, discomfort, emotional distress, mental harm; humiliation, embarrassment, and injury to reputation;

(e)    Under 42 *U.S.C.* § 1983, enter a judgment against the individual Defendant Decker for punitive damages;

(f)    Under the DDEA, enter a judgment against Defendant KCLC for compensatory damages for lost back pay and interest, lost front pay; lost pension; ill health, physical pain, discomfort, emotional distress, mental harm; humiliation, embarrassment, and injury to reputation;

(g)    Under the DDEA, enter a judgment against Defendant KCLC for punitive damages;

(h)    Award Plaintiff costs, interest, and attorneys' fees for this suit;

( *i* )    Issue a mandatory injunction directing Defendant KCLC to place Plaintiff in the position to which he would have normally progressed but for the illegal discrimination against him;

(j)    Alternatively, issue a mandatory injunction requiring Defendant KCLC to place Plaintiff in the next appropriate vacancy to which he normally would have been entitled; and

(k)    Award front pay until Plaintiff can be promoted or placed in a comparable or appropriate position;

(l)    Issue a permanent injunction enjoining Defendant KCLC from in the future

discriminating against foreign-born citizens in promotions to Assistant County Administrator and above, from discriminating against foreign-born citizens in the terms and conditions of their employment, and requiring appropriate reporting to the court or a federal monitor of steps taken to eliminate past or future discrimination;

(m)    Issue a permanent injunction requiring the Defendant KCLC to:

(*i*)    Notify everyone who learned of Defendants' treatment of Plaintiff that their conduct was illegal, and

(*ii*)    Expunge Plaintiff's personnel files of any derogatory information relating to this matter; and

(n)    Require such other and further relief as the Court deems just and proper under the circumstances.

**LaROSA & ASSOCIATES LLC**

*/s/ John M. LaRosa*
**JOHN M. LaROSA, ESQ. (Bar No. 4275)**
1225 King Street, Suite 802
Wilmington, DE 19801-3426
(302) 888-1290
JLR@LaRosaLaw.com

Dated: January 5, 2026                    *Attorney for Plaintiff*

Attorney Files/Client Files/KENNEDY, MARK/D.Del./Complaint

30